**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARMERS AUTOMOBILE INSURANCE ASSOCIATION and PEKIN INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT T. LONG, PAUL J. DHANENS and DIANE M. DHANENS, Individually and as Co-Administrators of the Estate of PHILIP A. DHANENS, Deceased,<br><br>Defendants. | Case No. 1:13-cv-01236 AWI BAM<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFFS' AMENDED MOTION FOR ENTRY OF DEFAULT JUDGMENT<br><br>(Doc. 42) |

On March 26, 2014, Plaintiffs Farmers Automobile Insurance Association and Pekin Insurance Company ("Farmers" or "Pekin" or collectively "Plaintiffs") filed an Amended Motion for Default Judgment against Defendant Paul and Diane Dhanens ("Defendants" or "the Dhanens"). (Doc. 39). In the pending Motion, Plaintiffs seek the entry of a default judgment against Defendants in an action seeking declaratory relief concerning Plaintiffs' rights and obligations under an insurance policy. Defendants have not responded to the motion or otherwise appeared in this lawsuit. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deems the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacates the hearing scheduled for April 25, 2014. For the following reasons, Plaintiffs' Motion for Default Judgment should be **GRANTED.**

1

## BACKGROUND

This is an insurance coverage action. Plaintiffs Farmers and Pekin are requesting a declaration from this Court that they have no duty to defend Defendant Scott Long under either a Homeowners Policy or a Personal Umbrella Liability Policy issued to Mark and Leigh Ann Long with respect to an underlying state-court action filed by the Dhanens and currently pending in the Fresno County Superior Court ("state court action"). Default has been entered against Scott Long, and therefore, the factual allegations of the complaint are taken as true.

According to the instant complaint, Plaintiff Farmers entered into a written insurance contract with Mark and Leigh Ann Long, the parents of Scott Long, as named insureds, policy number TH0156572. The policy provided for Homeowners Liability Insurance on a primary basis with an effective policy period from November 30, 2011 to November 30, 2012. (Doc. 2 ¶ 7). Defendant Pekin Insurance Company also issued a personal umbrella policy numbered 0U0019156 to Mark and Leigh Ann Long as named insureds. The effective dates of the umbrella policy were from November 30, 2011 to November 30, 2012 (collectively "the Policy"). (Doc. 2 ¶ 8). Defendant Long is an individual who claims to be an insured on each of the above-mentioned policies. (Doc. 2 ¶ 5).

On or about February 28, 2013, Defendants Paul and Diane Dhanens, parents of the deceased Phillip Dhanens, filed a complaint in the Fresno County Superior Court seeking damages from several defendants including Scott Long in a wrongful death and survival action. (Doc. 2, ¶ 17). The facts of the Dhanens' state court action are tragic. The Dhanens' complaint alleges that their son Phillips Dhanens died during a hazing ritual while a first semester freshman at California State University, Fresno ("Fresno State"), following a fraternity bid night ritual where fraternity officers locked pledges in a room and provided them with fatal quantities of alcohol.

The state court complaint alleges that on August 31, 2012, Phillip Dhanens attended a pinning ceremony to formally accept the bid to become a pledge of the Theta Chi fraternity. Following a dinner after the ceremony, all of the pledges, including Phillips Dhanens, returned to the fraternity house, where members of the fraternity escorted the pledges to the "Chapter Room" and "ordered them to sit in a semi-circle." (Doc. 5, ¶ 30). Executive Board members of the fraternity then presented alcohol to the pledges, passing several bottles of hard alcohol between them while the

officers and other members of the fraternity "encourag[ed] the pledges to drink." (Doc. 5, ¶ 30). The pledges including the decedent were told they were not allowed to leave the room until they drank all of the alcohol present. The Dhanens allege that two full bottles of hard alcohol were finished by the pledges within only two minutes. Fraternity members then gave the pledges additional bottles of alcohol to consume. (Doc. 5, ¶ 30).

After approximately 20 minutes, the decedent had become "visibly incapacitated, exhibiting signs of severe intoxication, including passing out and falling out of his chair and onto the floor." (Doc. 5, ¶ 31). At one point, the decedent was asked by fraternity members if he was alright. (Doc. 5, ¶ 31). The decedent allegedly answered "No," which the Dhanens allege indicates that the decedent was experiencing "conscious pain and suffering, and that his condition required immediate, qualified attention." (Doc. 5, ¶ 31). Six fraternity members then dragged the decedent to the "Drunk Room," where he was supposed to be watched over by two other fraternity members referred to as the "Sober Brothers." (Doc. 5, ¶ 32). The decedent was allegedly left unmonitored in the "Drunk Room" until a few hours later, when fraternity members found him covered in his own vomit and lying motionless. (Doc. 5, ¶ 33). The Dhanens specifically allege that "the individual Defendants knew that [the decedent] had consumed too much alcohol as a result of the bid night hazing ritual, that he was ill, and that he was unable to walk or take care of himself." (Doc. 5, ¶ 35). Paramedics were called to the scene, but were unable to revive the decedent. Phillip Dhanens was then rushed to St. Agnes Hospital where he was later pronounced dead. (Doc. 5, ¶ 33).

Plaintiffs filed the instant complaint for Declaratory Judgment in this action on August 5, 2013, against Defendants Diane and Paul Dhanens, individually and as co-administrators of the Estate of Phillip Dhanens and Defendant Scott Long. (Doc. 2).[1]

After the Dhanens failed to answer, Plaintiffs filed their initial motion for default judgment, which the Court denied without prejudice. (Doc. 41). On March 26, 2014, Plaintiffs filed an amended motion for default judgment against the Dhanens. (Doc. 42). Defendants did not oppose this motion. The Court has reviewed the amended motion, exhibits, and the applicable law, and is sufficiently advised on the issues involved.

---

[1] Plaintiffs' do not seek specific relief from the Dhanens, according to Plaintiffs, the Dhanens are joined here solely in order to be bound by any judgment rendered in the instant case. (Doc. 2, ¶ 6).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. FED. R. CIV. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, MOORE'S FEDERAL PRACTICE § 55.11 (3d ed. 2000).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted)).

## DISCUSSION

**A.  Service of Process and Jurisdiction**

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of Plaintiffs' Motion for Default Judgment. *See BR North 223, LLC v. Glieberman*, 2012 U.S. Dist. LEXIS 24288, ** 8-9 (E.D. Cal. Feb. 24, 2012). Under Fed. R. Civ. P 4(e), individuals such as the Dhanens may be served by:

(1)  following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

    (2)    doing any of the following:
          (A)    delivering a copy of the summons and of the complaint to the individual personally; or
          (B)    leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
          (C)    delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Pursuant to Federal Rule of Civil Procedure 4(e)(2), the Court finds that service of process on Defendants Paul and Diane Dhanens was sufficient. On August 8, 2013, Plaintiffs obtained a summons and requested that the Dhanens be served by the San Francisco County Sherriff's office. (Doc. 7). The proof of service states that on September 25, 2013, the Dhanens were served at 100 Spear Street, 1800, San Francisco, CA by substituted service on Alissa Hoy. (Docs. 21, 22). On October 21, 2013, after the Dhanens failed to answer or otherwise defend against this action and upon Plaintiffs' request, the Clerk entered default against the Dhanens. (Docs. 17, 18). On January 3, 2014, Plaintiffs filed their initial motion for default judgment. (Doc. 31). The Court denied Plaintiffs' initial motion without prejudice on March 13, 2014 because Plaintiffs failed to show that Alissa Hoy was authorized to accept service on behalf of the Dhanens. (Doc. 41). The Court ordered Plaintiffs to file an amended motion for default judgment establishing that service on Alissa Hoy was proper.

In support of its amended motion for default judgment, office administrator, Jasminn Johnson, indicates that on September 16, 2013, at approximately 9:30am she spoke with Kelly A. Corcoran of Kerr & Wagstaffe, LLP, located in San Francisco. *See* Declaration of Jasminn Johnson ("Johnson Decl."), Ex. A, (Doc. 42-2). Ms. Johnson declares that Kelly Corcoran is the attorney of record for Paul and Diane Dhanens in their related wrongful death state court case. Ms. Johnson informed Ms. Corcoran that a complaint for declaratory relief had been filed in this court naming Paul and Diane Dhanens as defendants. Ms. Corcoran agreed to accept service on behalf of her clients at the Kerr & Wagstaffe office. Johnson Decl. ¶ 5. On September 25, 2013, Plaintiffs personally served Alissa Hoy, a receptionist at Kerr & Wagstaffe, with a copy of the summons and complaint. Johnson Decl. ¶ 6. In the proof of service, the process server noted that Ms. Hoy was authorized to accept service at the Kerr & Wagstaffe law firm.

Federal Rule of Civil Procedure 4 permits service of process by, among other things, delivering a copy of the summons to an agent authorized by appointment or by law to receive service

5

of process. Plaintiffs filed a proof of service and supporting declarations establishing that Kelly Corcoran and by extension Alissa Hoy were authorized to accept service on behalf of the Dhanens in this matter. Johnson Decl., ¶ 5. This evidence satisfies the Court that the law firm of Kerr & Wagstaffe, and the agents thereof, were authorized to accept service of process on the Dhanens' behalf. Accordingly, service was proper pursuant to Rule 4(e)(2)(C).

Further, the allegations in the complaint are sufficient to establish subject matter jurisdiction in this Court pursuant to 28 U.S.C. § 1332(a)(1). Plaintiffs and the Dhanens are citizens of different states: Plaintiff Farmers is a corporation, incorporated in and with its principal place of business in Illinois. (Doc. 2, ¶ 3). Plaintiff Pekin is a corporation, incorporated in and with its principal place of business in Illinois. (Doc. 2, ¶ 4). Paul and Diane Dhanens are residents of Bakersfield, California. (Doc. 2, ¶ 6). Finally, the amount in controversy exceeds $75,000 exclusive of interest and costs.

## B. The Eitel Factors

Having considered the *Eitel* factors as discussed below, the Court finds that default judgment is appropriate as to Plaintiffs' claims.

### 1. Merits of the Claim and Sufficiency of the Complaint

The Court considers the merits of Plaintiffs' substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries.

#### i. Illinois Insurance Law

The Seventh Circuit has summarized Illinois law governing the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted). A court "will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.,* 223 Ill. 2d 352, 860 N.E.2d 307, 314, 307 Ill. Dec. 653 (Ill. 2006); *see also Native Am. Arts,*

6

*Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006).[2] As seen below, the Court finds that Plaintiffs' claims have been sufficiently plead and have substantive merit.

### i. Defendant Long is Not Insured Under the Policy

First, Plaintiffs assert that Defendant Long is not insured under either policy because at the time of incident Long was not a resident of his father's household in Mt. Vernon, Illinois. Plaintiffs allege that during the relevant time period Long was (1) a resident of Clovis, California; (2) a citizen of the State of California; and (3) had never resided in the Mt. Vernon, Illinois home. (Doc. 42 at 10). Plaintiffs argue that because Long is not an insured under the policy they are not obligated to defend Long in the underlying state court action. The Farmers policy defines who is an "insured" as follows:

"Insured" means:

a. You and residents of your household who are:

    (1) Your relatives; or

    (2) Other persons under the age of 21 and in the care of any person named above.

b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

    (1) 24 and your relative; or

    (2) 21 and in your care or the care of the person described in a.(1) above. (Doc. 2, ¶ 15).

Similarly, the umbrella Pekin policy defines who is an insured as follows:

6. "insured" means you and

    a. the following residents of your household:

        1. your relatives;

        2. a person under age 21 in the care of a person named above;

---

[2] Plaintiffs' suit raises claims based on an Illinois insurance contract. Therefore, the Court considers the appropriate law to apply to those claims. In the absence of a choice-of-law provision, California Civil Code section 1646 requires that a contract "be interpreted according to the law and usage of the place where it is to be performed; or, if [the contract] does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code, § 1646. The Court agrees with Plaintiffs that because the policies were issued to Mark Long—as named insured—who was a resident of Illinois at the time—for the specific purpose of insuring a residence located within the State of Illinois, Illinois law would apply to the sufficiency analysis of Plaintiffs' complaint.

7

(Doc. 2, ¶ 18).

In light of the above, Plaintiffs contend that they have no duty or obligation to defend Long in the Dhanens underlying state action because on the date of the incident, Long was a California resident living in or around Clovis. Further, prior to the incident, Long lived in California for several years and never resided at the insured residence in Mt. Vernon, Illinois. (Doc. 2, ¶ 22, 34). The Court finds that Plaintiffs' complaint sufficiently pleads the claim for a declaration of non-coverage, and that the claim is meritorious. There is no evidence to suggest that Mr. Long was ever a resident at the address in Mt. Vernon, Illinois where Mark Long maintained his household under the policy. As a result, Defendant Scott Long is not an insured under either the Farmers or Pekin policies.

### ii. Coverage Barred by Intentional Acts

Alternatively, Plaintiffs argue that Long is excluded from coverage because he intended the bodily injury suffered by the decedent. The Farmers policy specifically excludes a claim for damage which is "expected or intended" by the insured, even if such injury is "of a different kind, quality or degree than initially expected or intended." (Doc. 42-3). Likewise, exclusions in the Pekin umbrella policy provides "acts committed by or at the insured's directions with intent to cause personal injury or property damage" are excludable from coverage. (Doc. 42-3).

Plaintiffs argue that Dhanens' death was not an accident and was therefore an excluded intentional act. In support, Plaintiffs argue that the underlying action alleges a course of conduct by Long and his fellow fraternity members that was "intentional" and/or "expected," and not merely "negligent" or "accidental" in nature. According to the Complaint, the claimants allege that Long and the other fraternity members placed the pledges into a room, and forced them to consume several bottles of alcohol before leaving the room. After the decedent became visibly ill, he was taken to a "drunk room" where he was left unattended for several hours. Such intentional actions do not constitute an accident or an "occurrence" under the Farmers or Pekin Policies.

Based on Plaintiffs' well pleaded complaint, Plaintiffs' policies unambiguously exclude coverage for expected or intended injury from intentional acts. Under these specific exclusions, Plaintiffs have alleged sufficient evidence to conclude that there is no coverage for Mr. Long's acts under either the Farmers or Pekin policies.

8

### iii. Coverage Barred for Abusive Acts

Lastly, Plaintiffs argue that their policies specifically exclude coverage where the deceased's bodily injury arose out of the insured's "physical or mental abuse." (Doc. 42 at 21). Both policies specifically exclude coverage of any insured who inflicts, or directs another person to inflict, upon any person, sexual molestation, corporal punishment or physical or mental abuse which results in bodily injury or property damage. (Doc. 42 at 21).

Although no courts have directly addressed whether hazing activities constitute physical or mental abuse for the purposes of exclusion to an insurance policy, Illinois law provides that if "an insurance contract's provision is clear and unambiguous, the provision is applied as written." *Illinois Founders Inc., v. Barnett*, 710 N.E.2d 28, 36 (Ill. App. Ct. 1999). Plaintiffs argue that when applying the "plain, ordinary, and popular" meaning of the term "abuse" the Dhanens allegations against Long strongly suggest that he engaged in both physical and mental abuse of the decedent during the fraternity initiation event. *See* Black's Law Dictionary 10 (8th ed. 2004) (defining abuse as "[p]hysical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury."). The complaint alleges that as a part of the fraternity initiation event, Long and other fraternity members told the decedent to drink excessive and fatal amounts of alcohol. The complaint also alleges that Long was the fraternity recruitment chairman who "authorized, requested, commanded, participated in, or ratified the hazing and/or subsequent misconduct involving Phillip's incapacity." (Doc. 5 at ¶ 17). According to Plaintiffs', these actions constitute "abuse" of the decedent because those actions deviated from a "baseline of societal understanding of what is appropriate conduct" towards a person. *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724 (8th Cir. 2012) (holding that even though "mental abuse" was not defined in the policy, a reasonably prudent insured would discern that mental abuse is mental maltreatment, often resulting in mental or emotional injury.").

On these allegations, Plaintiffs have made out a plausible prima facie claim for a declaration that they are not required to defend Scott Long in the Dhanens state court action based on the alleged acts of abuse.

Accordingly, the second and third *Eitel* factors weigh in Plaintiffs' favor.

9

### 2.     Possibility of Prejudice to Plaintiff

*Eitel* requires that the Court consider whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, Plaintiffs would face prejudice if the Court did not enter a default judgment. Absent entry of a default judgment, Plaintiffs would be without recourse for recovery given Defendants' failure to participate in this litigation in any fashion. Accordingly, the first *Eitel* factor favors the entry of default judgment.

### 3.     The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, the sum of money at stake does not clearly weigh for or against granting the motion. Although Plaintiffs are not seeking monetary relief in this action, the amount of money at stake under the Policy is significant and a declaration that Long is not entitled to defense under the Policy could have a significant monetary impact on Defendants.

### 4.     The Possibility of a Dispute Concerning Material Facts

The fifth factor also weighs in Plaintiffs' favor. The facts of this case are relatively straightforward and Plaintiffs have provided the court with well-plead allegations with exhibits in support. Here, the Court may assume the truth of well-plead facts in the complaint following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendants' failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. *See*, *e.g.*, *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").

### 5.     Whether the Default Was Due to Excusable Neglect

Upon review of the record before the Court, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Plaintiffs served Alissa Hoy, an

10

agent authorized to accept service on the Dhanens behalf, with a copy of the summons and complaint. *See* Fed. R. Civ. P. 4(e)(2)(C). Further, on March 26, 2014, Plaintiffs also served the Dhanens with notice of its amended motion for default judgment by mailing a copy of the motion to Counsel Kelly Corcoran. (Doc. 42-5). Despite ample notice of this lawsuit and Plaintiffs' intention to seek a default judgment, the Dhanens have not appeared in this action to date. Thus, the record suggests that they have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the Court is cognizant of the policy favoring decisions on the merits—that policy is unavailable here because Defendants have not responded. This factor does not weigh against entry of default judgment.

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiffs are entitled to the entry of default judgment against Defendants. Accordingly, the Court will recommend that Plaintiffs' Motion for Default Judgment against Paul and Diane Dhanens be granted and that Plaintiffs be awarded a declaration that they have no obligation to defend Scott Long under the Policy in the Dhanens underlying state court action.

### **CONCLUSION**

Based on the consideration of the pleadings and exhibits to the present application, the Court RECOMMENDS as follows:

1. Plaintiffs Farmers Automobile Insurance Association's and Pekin Insurance Company's Amended Motion for Default Judgment (Doc. 42) be GRANTED;

2. The Court enter a judgment which declares that Plaintiff Farmers Automobile Insurance Association has no duty or obligation to defend Scott T. Long in Case No. 13

11

CECG 00801 pending in the Superior Court of Fresno County, California, and that the policy numbered TH0156572 does not apply to the claims in Case No. 13 CECG 00801; and

3.   The Court enter a judgment which declares that Plaintiff Pekin Insurance Company has no duty to defend Scott T. Long in Case No. 13 CECG 00801 pending in the Superior Court of Fresno County, California, and that the policy numbered 0U0019156 does not apply to the claims in Case No. 13 CECG 00801.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 23, 2014**                    /s/ Barbara A. McAuliffe          _
                                          UNITED STATES MAGISTRATE JUDGE

12